**Katressia SMITH, Appellant,**

v.

**UNION LABOR LIFE INSURANCE COMPANY, Appellee.**

**No. 91–CV–1239.**

District of Columbia Court of Appeals.

Argued Jan. 27, 1993.

Decided Feb. 19, 1993.

Maxine Bethel Cade, Washington, DC, for appellant.

Daniel S. Kozma, Washington, DC, for appellee.

Before FERREN and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellant Katressia Smith appeals from the District of Columbia Superior Court's grant of summary judgment which dismissed her complaint for wrongful discharge and tortious breach of employment contract against appellee, the Union Labor Life Insurance Company, under D.C.Super.Ct.Civ.R. 56(c) (1991). Ms. Smith sought compensatory damages, back pay, reinstatement of employment and other related relief against her employer, Union Labor Life, claiming that: (1) she was hired as an upper-level management employee rather than an at-will employee; (2) that she was given an incorrect set of guidelines to follow regarding her absence from employment; (3) that an implied contract could be inferred from the language in the guidelines; and (4) that Union Labor Life wrongfully terminated her employment and intentionally caused her to suffer emotional distress.

After the close of discovery, the appellee filed its motion for summary judgment, which Ms. Smith opposed. In an order issued on September 23, 1991, Judge von Kann found that based on the record, "it was beyond dispute" that Ms. Smith was an at-will employee. Also, he concluded

that the appellee "did not engage in extreme and outrageous conduct in connection with her termination."

## I.

Ms. Smith was employed by the Union Labor Life Insurance Company ("Union Labor Life") as a cost analyst on January 4, 1984, and was promoted on February 19, 1986, to a claims referral analyst as a management position. On August 2, 1988, Ms. Smith sustained injuries in an automobile accident and was unable to perform the duties of her position. On September 14, 1988, Union Labor Life notified Ms. Smith by letter that she must complete a disability form by September 30, 1988, or face termination. The letter explained the company policy that whenever an employee was absent due to an illness for five consecutive days, that employee must submit a disability form.

Ms. Smith reported for work on September 19, 1988, and returned the completed disability form to the appellee on that same day. Ms. Smith testified that the medication made her feel groggy and tired, and as a result, she did not work from September 27, 1988, through October 16, 1988.

On October 17, 1988, Ms. Smith returned to work and was handed a letter from Union Labor Life, dated October 13, 1988, terminating her employment, effective September 26, 1988. Ms. Smith submitted another disability form on October 17, 1988, following her second absence from work beginning on September 27, 1988, which continued for more than five consecutive days. As appellee's letter indicated, Ms. Smith was terminated because: (1) she was absent from work since September 27, 1988, without submitting written evidence of good reason for her absence; and (2) for failing to communicate with her immediate supervisor since September 29, 1988.

Although Ms. Smith made futile attempts to contact her supervisor by telephone, she testified that she did not write him a letter explaining her absence. Ms. Smith further testified that following September 29, 1988, the day marking the last conversation she had had with her supervi-

sor, she called the office on a daily basis to inform her supervisor that she would not be in to work that day. Ms. Smith claimed that she left messages for her supervisor, but that he did not return any of her calls. When Ms. Smith returned to work in mid-October she was presented with a letter of termination which became effective on September 26, 1988.

On appeal, Ms. Smith contends that these claims are disputed issues of material fact, and that the trial court erred in granting appellee's motion for summary judgment on grounds that Ms. Smith was an at-will employee. We disagree and affirm the trial court's judgment.

## II.

### A.  Summary Judgment

■ Summary judgment is appropriate " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Nader v. de Toledano*, 408 A.2d 31, 41 (D.C. 1979) (quoting Super.Ct.Civ.R. 56(c)), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). The moving party, Union Labor Life, has the burden of demonstrating the absence of any genuine issue as to material facts. *Nader, supra,* 408 A.2d at 42. Once the moving party has made the requisite showing that there is a lack of evidence to support the opponent's case, it becomes incumbent upon the non-moving party to demonstrate that such an issue exists. *Graff v. Malawer*, 592 A.2d 1038, 1040 (D.C.1991). In order to defeat a defense motion for summary judgment, the non-moving party, Ms. Smith, must make the evidentiary showing which will permit her to advance to trial by demonstrating " 'that [she] has a plausible ground for the maintenance of the cause of action.' " *Nader, supra,* 408 A.2d at 48 (citation omitted).

■ In reviewing a grant of summary judgment, this court conducts an independent review of the record. *Hill v. White,*

589 A.2d 918, 921 (D.C.1991) (citing *Spellman v. American Sec. Bank*, 504 A.2d 1119, 1122 (D.C.1986)); *Vessels v. District of Columbia*, 531 A.2d 1016, 1019 (D.C. 1987). This review is twofold: first, we determine whether the moving party has met its burden of proving that no dispute exists as to material facts, and second, we determine if the non-moving party has offered " 'competent evidence admissible at trial showing that there is a genuine issue as to a material fact.' " *Id.* (quoting *Nader, supra*, 408 A.2d at 48).

### B. No Material Dispute Exists

In reviewing the pleadings, exhibits and affidavits submitted to the trial court, and viewing these in the light most favorable to the appellant, *Nader, supra*, 408 A.2d at 42, we find that the appellee has sustained its burden of proving that no material dispute exists, and that appellant has not adequately demonstrated the presence of a material dispute.

#### 1. At–Will Employee Claim

■ Appellant Smith claims that the issue of whether she was an at-will employee remains in dispute. However, Ms. Smith has failed to controvert the facts set forth in the documents and affidavits submitted by Union Labor Life establishing that Ms. Smith was an at-will employee. It is well settled in the District of Columbia that "an employment contract, absent evidence to the contrary, is terminable at the will of either party." *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 289 (D.C.1989) (citations omitted). *See also Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C.1991) ("with a very limited exception, an employer may discharge an at-will employee at any time and for any reason, or for no reason at all") (citations omitted). Ms. Smith failed to present sufficient evidence of either an express or an implied contract of definite duration, and thus her employment at Union Labor Life was terminable at-will.

■ Ms. Smith's response to Union Labor Life's summary judgment motion included opposition motions, her complaint, appellee's policy guidelines and an affidavit on her own behalf averring that she was hired as a management employee, and that she was given the incorrect guidelines by appellee. This response is plainly inadequate to defeat Union Labor Life's motion for summary judgment. Appellant cannot rest on the general allegations of her pleadings and her failure to provide support for her contention of a material dispute "will result in the court's acceptance of a movant's statement as undisputed absent clear support for any such contention from the record." *Vessels, supra*, 531 A.2d at 1018; *see also* D.C.Super.Ct.Civ.R. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading"); D.C.Super.Ct.Civ.R. 12–I(k) ("the Court may assume that facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are ... controverted in a statement filed in opposition to the motion").

Appellant failed to comply with Rules 56(e) or 12–I(k) in challenging appellee's summary judgment motion. Although this failure, in and of itself, is not fatal to appellant's claims, *Miller v. Greater Southeast Community Hosp.*, 508 A.2d 927, 929 n. 4 (D.C.1986), we find, based on an independent review of the record, that the trial judge did not err in granting appellant's motion. *Hill, supra*, 589 A.2d at 921.

#### 2. Incorrect Guidelines

■ Ms. Smith next claims that Union Labor Life provided her with incorrect guidelines regarding company policy contending that, in so doing, appellee engaged in wrongful business practices. Ms. Smith bases this claim on the fact that she received the Human Resources Policies and Procedures Handbook (the "Blue Handbook") given to all employees, but did not receive the Human Resources Policy and Procedure Manual (the "White Manual") given to upper-level management employees. Again, Ms. Smith failed to rebut the showing made by Union Labor Life through its documents, pleadings and affidavits of the absence of a material dispute.

Further, Union Labor Life produced sufficient evidence to demonstrate that Ms. Smith was an at-will management employee who did not have responsibility for personnel decisions, and thus was not entitled to receive the White Manual. Even if Ms. Smith did demonstrate her entitlement to the White Manual as an upper-level management employee, which she did not, her claim would be unavailing because the disclaimer language contained in the White Manual, stating that management employees are at-will employees, is substantially similar to the disclaimer language in the Blue Handbook, which Ms. Smith did receive.

### 3. Implied Contract Claim

■ Appellant's theory of an implied contract is based on the policies and procedures of the Blue Handbook. However, it is undisputed that the Blue Handbook contains express disclaimers that it is not an employment contract.[1] Given the facts of this case, appellant's attempt to demonstrate an implied contract based on the language in either manual is of no avail because of the "express disavowals that they created any contractual rights for employees." *Alameda v. Martin Marietta Corp.*, 6 IER Cases 95, 97, 1990 WL 236125 (D.D.C.1990).

■ While this jurisdiction recognizes that an implied contract may arise from the language of an employee handbook or manual, *Washington Welfare Ass'n, Inc. v. Wheeler*, 496 A.2d 613, 615 (D.C.1985), an "employer, however, may effectively disclaim any implied contracts." *Goos v. National Ass'n of Realtors*, 715 F.Supp. 2, 4 (D.D.C.1989). The legal effect

of such a disclaimer is, in the first instance, a question for the court to decide. *Id.* Based on the disclaimer language contained in the Blue Handbook, and given no facts or circumstances indicating that the disclaimer was unconscionable or that the employer and employee had entered into some kind of agreement that superseded the disclaimer in the handbook, we conclude that appellant was a management employee at-will who could be discharged with or without cause.[2] *See, e.g., id.* (citation omitted).

### 4. Wrongful Discharge and Intentional Infliction of Emotional Distress Claim

■ Finally, Ms. Smith claims that she was wrongfully discharged because she allegedly followed and fulfilled the policy guidelines for filing a disability form after five consecutive days of absence from employment. However, even if the record supported this contention, "having established that [appellant] was an at-will employee of [appellee's], [appellee] also prevails on the wrongful discharge claim.... [because] the District of Columbia does not recognize this tort for at-will employees." *Alameda, supra,* 6 IER Cases at 98. *Compare Sorrells, supra,* 565 A.2d at 289 *with Adams, supra,* 597 A.2d at 34 (adopting narrow public policy exception to the at-will doctrine under which employee may sue former employer for wrongful discharge based on employee's refusal to violate statute or municipal regulation).

■ Similarly, Ms. Smith's claim that Union Labor Life's conduct was outrageous and that appellee intentionally caused her to suffer emotional distress also

1. The Blue Handbook states in relevant part: This handbook is intended only for your information and guidance; it is not an employment contract and does not guarantee any fixed terms and conditions of employment.... Employment for management personnel is for no definite period, is terminable at will and is subject to satisfactory performance.

2. Even if the record demonstrated that an implied contract did arise, Ms. Smith failed to comply with the policy guidelines (her basis for

the implied contract claim) by filing a disability form within five consecutive days of her second absence from employment beginning on September 27, 1988. (See Part I). Moreover, Ms. Smith did not file a 12–I(k) motion opposing appellee's request for summary judgment to provide support for her contentions of a factual dispute. Any reliance she would have placed on these guidelines, *i.e.,* the implied contract, is lost due to her lack of compliance with them, and thus her actions undermine her claim that an implied contract arose.

**270**

fails. This complained-of conduct simply does not remotely rise to the requisite level to sustain a claim of intentional infliction of emotional distress. *See Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.1980) (liability may be imposed for "extreme and outrageous conduct intentionally or recklessly [causing] severe emotional distress to another") (internal quotation and citation omitted).

As mentioned above, Ms. Smith did not file a 12–I(k) response challenging appellee's summary judgment motion and consequently, failed to point to sufficient evidence in the record that would sustain her contention. Because Ms. Smith was an at-will employee, her claim is merely one of "dismissal without prior disciplinary procedures" and that "simply [does] not satisfy the standard for liability" for the tort of intentional infliction of emotional distress. *Schoen v. Consumers United Group, Inc.,* 670 F.Supp. 367, 379 (D.D.C.1986). The record reveals that Union Labor Life's conduct in discharging Ms. Smith did not go "'beyond all possible bounds of decency and [was not] regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* (quoting *Waldon, supra,* 415 A.2d at 1076).

Furthermore, Ms. Smith's claims do not meet the narrow public policy exception to the at-will termination doctrine whereby an at-will employee may sue his or her employer for wrongful discharge "when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." *Adams, supra,* 597 A.2d at 34. *Cf. Gray v. Citizens Bank of Washington,* 602 A.2d 1096, 1096–97 (D.C.) (public policy exception does not apply to wrongful discharge claim in which at-will employee was discharged for reporting illegal activities by other employees to his employer), *reinstated on denial of reh'g,* 609 A.2d 1143 (D.C. 1992).

### III.

In sum, the materials presented to the trial court adequately demonstrated that appellee has met its burden of proving that no genuine issue of material fact exists. Appellant, on the other hand, has failed to identify any dispute as to material facts sufficient to present a genuine issue for trial. *Graff, supra,* 592 A.2d at 1042. Accordingly, we affirm the trial court's grant of summary judgment which appellee is entitled to as a matter of law. *Nader, supra,* 408 A.2d at 48.

*Affirmed.*